IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Tito F. Harris, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 4:20-cv-0906-TMC |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Warden, Lieber Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Tito F. Harris ("Petitioner"), a state prisoner proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 3, 2020. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this matter was referred to a magistrate judge for pretrial handling. On July 27, 2020, Respondent filed a Motion for Summary Judgment, (ECF Nos. 25, 26), and Petitioner filed a Response in Opposition to Respondent's motion, (ECF No. 33). Before the court is the magistrate judge's Report and Recommendation ("Report"), which recommends that the Respondent's Motion for Summary Judgment be granted and that the Petition be denied. (ECF No. 35). Petitioner filed objections to the Report on October 19, 2020. (ECF No. 38).

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter.

*Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely

almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . d[id] not alert the court to matters which were erroneously considered by the Magistrate Judge"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Additionally, since Petitioner is proceeding *pro se*, this court is charged with construing his Petition and filings liberally in order to allow for the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (noting that "when confronted with the objection of a pro se litigant, [the court] must also be mindful of [its] responsibility to construe pro se filings liberally").  This does not mean, however, that the court can ignore a *pro se* party's failure to allege or prove facts that establish a claim currently cognizable in a federal district court. *See Stratton v. Mecklenburg Cty. Dep't of Soc. Servs.*, 521 Fed. App'x 278, 290 (4th Cir. 2013) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985) (noting that "'district judges are not mind readers,' and the principle of liberal construction does not require them to 'conjure

up questions never presented to them or to construct full-blown claims from sentence fragments'").

## I. BACKGROUND/PROCEDURAL HISTORY[1]

Petitioner is currently serving life sentence at the Lieber Correctional Institution of the South Carolina Department of Corrections. (ECF Nos. 1 at 1; 25 at 1, 8). Petitioner filed the instant action to challenge his conviction for murder based on ineffective assistance of counsel. (ECF Nos. 1 at 1, 7; 1-1 at 8–15).

In February 2010, Petitioner was indicted for murder based on the State's allegations that he had shot and killed his wife, Shantay Harris ("Shantay"). (ECF Nos. 25 at 1; 25-2 at 35–36). The case proceeded to trial on March 14, 2011, at which Petitioner was represented by attorney Guy Vitetta ("Trial Counsel"). (ECF Nos. 25 at 2; 25-1 at 3). The State presented evidence that, prior to the murder, Shantay had taken steps towards ending her marriage with Petitioner, including separating from Petitioner and taking her two sons, and scheduling an appointment with a divorce lawyer. (ECF No. 25 at 2). At the time of the murder, Shantay was living in Moncks Corner, South Carolina with her two sons, her sister, and her sister's four children, while Petitioner resided in North Carolina. *Id.* Shantay's sister testified that Petitioner had repeatedly called Shantay in the days leading up to the murder because he was angry that Shantay had allowed their children to stay

---

[1] These undisputed facts are taken from Respondent's motion for summary judgment, (ECF No. 25), which Petitioner conceded in his Response are "substantially correct." (ECF No. 33 at 1).

with Petitioner's uncle while Shantay was at work.  *Id*.  On the night of the murder,

Petitioner called Shantay twenty-four times between 11:37 p.m. and 12:06 a.m.  *Id*.

Shantay's eleven-year-old son testified at trial that on the night of the murder he

was asleep in his mother's room when he heard a loud sound downstairs followed

by footsteps coming up the stairs and towards the bedroom.  *Id*. at 3.  He testified

that Petitioner came into the room and demanded that Shantay come outside with

him.  *Id*.  Shantay refused and indicated that their son was in the room with her.  *Id*.

Petitioner then threw Shantay to the ground and slapped her, at which point her son

immediately rushed over to her.  *Id*.  Petitioner then picked up Shantay's phone

and began to look through it.  *Id*.  Her son testified that when Petitioner found his

uncle's contact information in Shantay's phone he "went berserk" and accused

Shantay of having an affair with his uncle.  *Id*.  Shantay was on the floor crying

and holding her son in her lap while he tried to intervene and explain to Petitioner

that Shantay was working all the time.  *Id*.  Petitioner then pulled out a gun and

pointed it at Shantay, who was just able to push her son out of the way before

Petitioner shot her in the head.  *Id*.  Her son testified that Petitioner was "smirking"

and "laughing" after shooting Shantay.  *Id*.

Shantay's sister also testified regarding the night of the murder.  *Id*. at 2–3.

Around 5:00 a.m., she was awakened by a loud noise inside the house.  *Id*. at 2.

She looked out the window and, upon seeing Petitioner's car parked in the front yard, immediately called 911. *Id*. She then heard Shantay scream and rushed to Shantay's room. *Id*. As she approached the bedroom, Petitioner walked by with a "normal" demeanor and said, "She's gone." *Id*. at 3. She hurried into the bedroom and found Shantay, lying on the floor with blood pouring out of the back of her head, and Shantay's son, crying. *Id*. She immediately began to perform CPR on Shantay while Shantay's second son called 911. *Id*.

Shantay's second son, who was thirteen at the time, testified that he had been asleep in a different room when he awoke to the sound of his mother screaming. *Id*. at 4. He got out of bed and walked down the hall and could hear his mother screaming and Petitioner yelling "shut up." *Id*. He testified that when Petitioner walked out of the bedroom he appeared "happy," said "she's gone," and went downstairs. *Id*. When he went into the bedroom, he saw his aunt performing CPR on his mother and immediately called 911. *Id*.

When the paramedics arrived, Shantay had no pulse, was not breathing, and appeared ashen due to significant blood loss. *Id*. They pronounced her dead at the scene. *Id*. An autopsy confirmed that her cause of death was a single gunshot wound to the head, and a forensic pathologist estimated that, based on the stippling around the entrance wound, the weapon was fired from a distance of three feet or less. *Id*.

The police arrived on scene in time to witness Petitioner get into his car and leave, and he was pulled over about a quarter of a mile away from the house. *Id*. at 5. The officer found a .22 caliber revolver with one round missing in Petitioner's pocket, and a forensics expert later matched the gun to the bullet used to kill Shantay. *Id*.

After the State rested, Trial Counsel argued the facts warranted a charge on the lesser included offense of voluntary manslaughter. *Id*. at 6. Specifically, Trial Counsel asserted the younger son's testimony that Petitioner "went berserk" upon seeing his uncle's contact information in Shantay's phone evidenced that Petitioner acted in the heat of passion without malice. *Id*. The State disagreed and argued there was no evidence Petitioner acted in the heat of passion. *Id*. at 6–7. The court considered the issue during an overnight recess and decided to charge voluntary manslaughter "out of an abundance of caution." *Id*. at 8. In addition, the court also instructed the jury that malice could be inferred from Petitioner's use of a deadly weapon. *Id*. Trial Counsel did not object to any of the jury instructions. The jury found Petitioner guilty of murder and he was sentenced to life in prison. *Id*.

Petitioner appealed both his conviction and his sentence, arguing the trial court should have directed a verdict of not guilty on the murder charge because there was evidence he acted in the heat of passion. *Id*. at 8–9; *see also* (ECF No. 1 at 2). The South Carolina Court of Appeals dismissed his appeal on the merits. (ECF Nos. 1

at 2; 25 at 9). Subsequently, Petitioner applied for post-conviction relief ("PCR"), alleging ineffective assistance on multiple grounds, including that Trial Counsel failed to object to the court's instruction that the jury could infer malice from his use of a deadly weapon pursuant to *State v. Belcher*, 385 S.C. 597, 685 S.E.2d 802 (2009).[2] (ECF Nos. 1 at 3; 25 at 9). In January 2017, a hearing was held on Plaintiff's PCR application. (ECF No. 25 at 9). During the hearing, Trial Counsel testified that his strategy at trial had been to elicit mitigating evidence to warrant a charge of voluntary manslaughter and help Petitioner avoid a life sentence. *Id*. Trial Counsel further conceded that, at the time of Petitioner's trial, he was unfamiliar with the South Carolina Supreme Court's decision in *Belcher*, which had been decided more than a year before the trial. *Id*.

On October 31, 2017, the PCR court denied Petitioner's application. *Id*. at 10; (ECF No. 1 at 3). The court recognized that, under *Belcher*, an implied malice charge is inappropriate where there is mitigating evidence to excuse or justify a homicide committed with a deadly weapon. (ECF No. 25 at 10). However, the court also discussed *State v. Price*, 400 S.C. 110, 114–15, 732 S.E.2d 652, 654 (Ct. App. 2012), a South Carolina Court of Appeals opinion issued after *Belcher* in which the Court of Appeals held the implied malice charge was appropriate, even

---

[2] In *Belcher*, the South Carolina Supreme Court held, in relevant part, that "the 'use of a deadly weapon' implied malice instruction has no place in a murder . . . prosecution where evidence is presented that would reduce, mitigate, excuse or justify the killing . . . ." 385 S.C. at 610, 685 S.E.2d at 809.

where the trial court charged the jury on a lesser-included offense, because the court found no such mitigating evidence in the record. *Id.* As in *Price*, the PCR court found there was no evidence in the trial record that would have reduced, mitigated, excused, or justified the murder and, consequently, the implied malice charge was proper under both *Belcher* and *Prince* given the facts presented at trial. *Id.* at 10–11. Accordingly, the PCR court denied Petitioner's application for relief with prejudice. *Id.* at 11; (ECF No. 1 at 3). Petitioner appealed only on the issue of whether counsel was ineffective for failing to object to the implied malice charge. (ECF Nos. 1 at 4; 25 at 11). The South Carolina Supreme Court transferred jurisdiction over the appeal to the Court of Appeals and, in October 2019, the Court of Appeals denied certiorari. (ECF No. 25 at 11).

Consequently, Petitioner initiated this action on March 2, 2020, alleging his Sixth and Fourteenth Amendment rights to effective assistance of counsel were denied by Trial Counsel's failure to object to the implied malice jury instruction. (ECF Nos. 1 at 7; 1-1 at 8–15). In particular, Petitioner asks the court to "[g]rant a new trial, or, in the alternative, grant [Petitioner] an evidentiary hearing to resolve conflicting state and federal law." (ECF No. 1 at 17). On July 27, 2020, Respondent filed his return and a Motion for Summary Judgment, (ECF Nos. 25, 26), and Petitioner responded on September 10, 2020, (ECF No. 33). The magistrate judge entered his Report on October 2, 2020, recommending the

undersigned grant the Respondent's Motion for Summary Judgment (ECF No. 26) and deny the Petition (ECF No. 1). (ECF No. 35). Petitioner filed objections to the Report. (ECF No. 38). Accordingly, the matter is now ripe for review.

## II. DISCUSSION

In his Report, the magistrate judge recommends that the undersigned grant Respondent's Motion for Summary Judgment and deny the Petition. (ECF No. 35 at 16). Specifically, the magistrate judge noted that "[t]he PCR court found that the malice instruction by the trial court was proper, and trial counsel had no basis to object to the jury instructions," and "a state court's decision on a question of state law is binding in federal court." *Id*. at 11 (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Thomas v. Davis*, 192 F.3d 445, 449 n.1 (4th Cir. 1999)). Additionally, although "a presumption of correctness attaches to state court factual findings," the magistrate judge found in this case that "[t]he state PCR court's findings of fact are not only entitled to the presumption of correctness, but also are supported by the record as there is no argument of self-defense or other evidence that would reduce, mitigate, excuse or justify Petitioner's shooting the victim." *Id*. at 11–12 (citing 28 U.S.C. § 2244(e)(1); *Evans v. Smith*, 220 F.3d 306 (4th Cir. 2000)) (internal citations omitted). The magistrate judge further found that, "[e]ven if there was a deficiency by [Trial Counsel], it was harmless error . . . because there was overwhelming evidence of guilt." *Id*. at 12. Thus, the

magistrate judge concluded that "[t]he PCR court's findings were not contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor were the PCR court's findings "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id*. at 15.   Accordingly, the magistrate judge recommends the court grant Respondent's motion for summary judgment. *Id*. at 16.

Petitioner filed objections to the Report.  (ECF No. 38).  In his first objection, Petitioner argues the magistrate judge erred in deferring to the PCR court's ruling that the implied malice instruction was proper based on the evidence at trial such that Trial Counsel had no basis on which to object to the instruction.  *See id*. at 1–3.  Specifically, Petitioner asserts the magistrate judge failed to consider his younger son's testimony that he "went berserk" after going through Shantay's phone.  *Id*. at 2.  The court acknowledges that, although the magistrate judge summarized the bulk of the younger son's testimony, the Report does not specifically reference his statement that Petitioner "went berserk."  *See generally* (ECF No. 35).  Nevertheless, whether the son's testimony constituted evidence to mitigate, excuse, or justify the murder such that the implied malice charge was improper is purely a question of state law.  Thus, as the magistrate judge properly found, the PCR court's rulings that there was no such evidence mitigating or

justifying the murder and that the implied malice jury instruction was proper was binding on this court. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("reemphasiz[ing] that it is not the province of a federal habeas court to reexamine state-court determinations on state law questions"). Therefore, this objection is overruled.

In his second and third objections, Petitioner asserts the magistrate judge erred in finding the PCR court correctly ruled that the facts in this case are analogous to those in *Price* and that, even if Trial Counsel had erred in failing to object, Petitioner could not establish that he was prejudiced by such failure based on the overwhelming evidence of guilt. *See* (ECF No. 38 at 3–5). However, these objections merely restate the conclusory allegations and arguments set forth in his Petition and response to summary judgment. *Compare id.*, *with* (ECF Nos. 1 at 7; 1-1 at 3–15; 33 at 4–10). It is well-settled in this Circuit that "an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object." *Jesse S. v. Saul*, No. 7:17-cv-00211, 2019 WL 3824253, at *1 (W.D. Va. Aug. 14, 2019); *see also, e.g.*, *Howard*, 408 F. Supp. 3d at 726 (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Nichols v. Colvin*, No. 2:14-cv-50, 2015 WL 1185894, at *8 (E.D. Va. Mar. 13, 2015) (finding that the rehashing of arguments

raised to the magistrate judge does not comply with the requirement to file specific objections). Indeed, a district court "may reject perfunctory or rehashed objections to R&Rs that amount to a second opportunity to present the arguments already considered by the Magistrate Judge." *Heffner v. Berryhill*, No. 2:16-cv-820, 2017 WL 3887155, at *3 (D.S.C. Sept. 6, 2017) (internal quotation marks omitted). Moreover, these objections state nothing more than Petitioner's "disagreement with [the] magistrate's suggested resolution," rather than specifically identifying any factual or legal error in the Report. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Accordingly, the remainder of the Report and the magistrate judge's recommendations are reviewed only for clear error and the court need not provide any explanation for adopting the magistrate judge's recommendations. *Camby*, 718 F.2d at 199–200; *Dunlap*, 288 F. Supp. 3d at 662. Having carefully and thoroughly reviewed the Report, the record, and the parties' briefing, the court overrules the remainder of Plaintiff's objections, (ECF No. 38), and adopts the Report herein.

### III. CONCLUSION

After a careful and thorough review of the record under the appropriate standards, as set forth above, the court adopts the Report (ECF No. 35), which is incorporated herein by reference. Accordingly, the Respondent's Motion for

Summary Judgment (ECF No. 26) is **GRANTED**. Thus, Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED.**

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In the instant matter, the court finds that the petitioner failed to make a "substantial showing of the denial of a constitutional right."  Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**


                                              s/Timothy M. Cain
                                              United States District Judge


Anderson, South Carolina
January 19, 2021